1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10
11
12
13  UNITED STATES OF AMERICA         )  CV 12-00960 RSWL (JPR)
    AND THE STATE OF                 )
14  CALIFORNIA, *EX REL.*, JULIE     )  **ORDER Re: PLAINTIFF'S**
    A. MACIAS                        )  **MOTION FOR PARTIAL**
15                                   )  **DEFAULT JUDGMENT AGAINST**
                  Plaintiff**S**,    )  **DEFENDANTS PACIFIC**
16                                   )  **HEALTH CORPORATION AND**
                                     )  **LOS ANGELES DOCTORS**
17       v.                          )  **HOSPITAL CORPORATION**
                                     )  [246]
18  PACIFIC HEALTH CORPORATION,      )
    LOS ANGELES DOCTORS              )
19  HOSPITAL, SGG, INC.,             )
    PROCARE MOBILE RESPONSE          )
20  LLC, KAREN TRIGGIANI,            )
    ROBERT BARRETT, KEIVAN           )
21  GOLCHINI, M.D., FARHAD           )
    KHOSSOUSSI, M.D., LITOS O.       )
22  MALLARE, M.D.                    )
                                     )
23                Defendants.        )
    _____ )
24
25       Currently before this Court is Plaintiff Julie A.

26  Macias' ("Plaintiff") Motion for Partial Default

27  Judgment against Defendants Pacific Health Corporation

28  ("PHC") and Los Angeles Doctors Hospital Corporation

                                    1

("L.A. Hospital") (collectively known as "Corporate Defendants") [246].  Plaintiff seeks entry of default judgment and damages against Corporate Defendants as to Plaintiff's fifth, ninth, tenth, and eleventh claims. The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** Plaintiff's Motion for Partial Default Judgment against Corporate Defendants as to Plaintiff's fifth, ninth, tenth, and eleventh claims [246] is **GRANTED.**  The Court defers entry of judgment until such time that the case is resolved in its entirety as to all claims and parties.

## I.   BACKGROUND

### A.   Factual Background

This action arises out of a *qui tam* action under the False Claims Act 31 U.S.C. §§ 3729-3733, and the Federal and State Anti-Kickback Laws Plaintiff brought against PHC, L.A. Hospital, SGG, Inc. ("SGG"), Procare Mobile Response LLC, Karen Triggiani, Robert Barrett, Keivan Golchini, M.D., Farhad Khossoussi, M.D., and Litos O. Mallare, M.D. (collectively known as "Pacific Defendants").

Plaintiff is a registered nurse who was employed at the Los Angeles Metropolitan Medical Center ("LAMMC") on the Psychiatric Emergency Team ("PET").  Am. Compl. ¶ 1.  PHC is a Georgia corporation with its principal place of business in Tustin, California.  Id. at ¶ 9. L.A. Hospital is a California corporation with its

principal place of business in Los Angeles, California. Id. at ¶ 10.

Plaintiff alleges Pacific Defendants were involved in an illegal scheme from at least 2004 to 2012 where they unnecessarily hospitalized patients via fraudulent 5150 psychiatric holds and then fraudulently billed Medicare and/or Medi-Cal.  Id. at ¶ 23.  Plaintiff alleges Pacific Defendants unlawfully admitted patients by pressuring evaluators to find all patients met the criteria for a 5150 hold if they were Medicare or Medi-Cal recipients.  Id. at ¶¶ 168, 173, 175, 180.  Pacific Defendants also falsified "voluntary" admissions documents for patients who lacked mental capacity to voluntarily assent to admission.  Id. at ¶¶ 268-69.

Plaintiff alleges she was harassed and threatened when she complained about the illegal scheme and received less evaluation calls.  Id. at ¶ 282.  As a result of the retaliation, Plaintiff alleges her income was reduced to about one quarter of what she previously earned.  Id. at ¶ 298.

Plaintiff alleged eleven causes of action in the Amended Complaint.  See Am. Compl.  She is seeking partial default judgment for counts five and nine through eleven of the Amended Complaint against Corporate Defendants.  The fifth claim against Corporate Defendants is a violation of the False Claims Act pursuant to 31 U.S.C. § 3730(h).  Id. at ¶ 357. The ninth claim against Corporate Defendants is a

violation of California's False Claims Act pursuant to California Government Code § 12653(b). <u>Id.</u> at ¶ 390. The tenth claim against Corporate Defendants is a violation of California's Health and Safety Code pursuant to § 1278.5. <u>Id.</u> at ¶ 397. The eleventh claim against Corporate Defendants is a violation of California Labor Code § 1102.5 and constructive discharge in violation of public policy. <u>Id.</u> at ¶ 405.

**B.  <u>Procedural Background</u>**

Plaintiff filed a Complaint against Corporate Defendants on February 3, 2012. ECF No. 1. On May 22, 2013, the Government declined to intervene. ECF No. 19. On August 20, 2013, Plaintiff filed an Amended Complaint adding SGG, Procare Mobile Response, LLC, Karen Triggiani, Robert Barrett, Keivan Golchini, M.D., Farhad Khossoussi, M.D., Alan Markie, M.D., and Litos O. Mallare, M.D. ECF No. 31. On February 11, 2014, the State of California declined to intervene. ECF No. 36. Plaintiff served Pacific Defendants with the Summons and Amended Complaint on April 2, 2014. ECF Nos. 39-47, 65-70. On June 14, 2014, Corporate Defendants filed an Answer to the Complaint. ECF No. 102. On June 30, 2014, Barrett, Golchini, and Triggiani filed Answers to the Complaint. ECF Nos. 108-10.

On April 12, 2014, Corporate Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 58. On May 30, 2014, the Court denied Corporate

Defendants' Motion to Dismiss.  ECF No. 100.  On July 7, 2014 and July 14, 2014, Mallare and Markie filed Motions to Dismiss Plaintiff's Amended Complaint.  ECF Nos. 112-13.  On November 5, 2014, the Court denied Mallare and Markie's Motions to Dismiss.  ECF No. 132.  On November 17, 2014 and November 19, 2014, Mallare and Markie filed Answers to the Complaint.  ECF Nos. 136-37.  The Clerk entered Default against SGG On February 5, 2015.  ECF No. 150.

On January 26, 2016, counsel for Corporate Defendants made a Motion to Withdraw as Counsel pursuant to Corporate Defendants' request because they did not have sufficient funds to pay counsel and requested they cease defending them.  Mot. to Withdraw 4:9-16, ECF No. 180.  On March 21, 2016, the Court granted Corporate Defendants' Motion to Withdraw as Counsel.  ECF No. 187.  The Court ordered Corporate Defendants secure new counsel within thirty days of the order.  Order 6:9-17.  On April 26, 2016, the Court ordered Corporate Defendants to show cause why they failed to comply with the Court's March 21, 2016 order.  Order to Show Cause 2:17-21; ECF No. 198.  The Court advised Corporate Defendants that if they failed to do so, the Court may impose sanctions and strike their Answer, placing them in default.  Id. at 2:21-24.  Corporate Defendants failed to comply with the Court's April 26, 2016 order and their Answer was stricken on May 9, 2016.  ECF No. 214.  The Court ordered the Clerk

to enter default against Corporate Defendants.  <u>Id.</u>
Default against Corporate Defendants was entered on May 9, 2016.  ECF No. 215.  Plaintiff filed the instant Motion for Partial Default Judgment against Corporate Defendants on July 18, 2016.  ECF No. 246.

## II.   DISCUSSION

**A.   <u>Legal Standard</u>**

Default Judgment is within the discretion of the district court.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980); <u>see</u> Fed. R. Civ. P. 55.  Both procedural and substantive requirements must be met.

Procedurally, the requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, and Local Rule 55-1 must be met.  <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1006 (C.D. Cal 2014).  Local Rule 55-1 provides: "When an application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with F.R.Civ.P. 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Service Members Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (e) That notice has been served on the defaulting

6

party, if required by F.R.Civ.P. 55(b)(2)."  L.R. 55-1.

Courts should also consider the following factors in determining whether to grant a motion for default judgment: "(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

If the court determines that the defendant is in default, "'the factual allegations of the complaint, other than those relating to damages, are taken as true.'" <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)). Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999).

**B.  <u>Analysis</u>**

Plaintiff seeks entry of partial default judgment against Corporate Defendants for failure to respond or otherwise defend itself in this matter as to

7

Plaintiff's fifth, ninth, tenth, and eleventh claims. <u>See generally</u> Mot. for Default J. ("Mot."), ECF No. 246.  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Partial Default Judgment.

    1.  <u>Jurisdiction and Service of Process are Proper</u>

In considering whether to enter default judgment against Corporate Defendants, the Court must first determine whether it has jurisdiction over the subject matter and parties to the case.  <u>In re Tuli</u>, 172 F.3d at 712.  Generally, lack of personal jurisdiction is a defense that must be asserted or is waived by a party. Fed. R. Civ. P. 12(h)(1).  When a court "is considering whether to enter default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." <u>In re Tuli</u>, 172 F.3d at 712.

    a.  *Personal Jurisdiction is Proper*

Where there is no applicable federal statute about personal jurisdiction, the long-arm statute of the state in which the district court sits applies.  <u>See Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998).

Exercising personal jurisdiction over a defendant requires: 1) a showing that the state in which the plaintiff is seeking to establish personal jurisdiction provides a basis under its law to exercise personal jurisdiction and 2) exercising personal jurisdiction is not inconsistent with federal due process.  <u>Hirsch v. Blue Cross, Blue Shield of Kansas City</u>, 800 F.2d 1474,

1477 (9th Cir. 1986).  California's long-arm statute permits a court to exercise jurisdiction on any basis that is not inconsistent with California or the United States' Constitution.  <u>See</u> Cal. Civ. P. Code § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800-01 (9th Cir. 2004). Therefore, only a due process analysis is required.

Due process requires that a defendant have "minimum contacts" with the forum state so that exercising jurisdiction does not "offend traditional notions of fair play and substantial justice."  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).  Depending on the contacts, there may be general or specific jurisdiction.  <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991).  If a defendant's contacts with the forum state are "substantial" or "continuous and systematic," general jurisdiction may be exercised over that defendant for any cause of action. <u>Schwarzenegger</u>, 374 F.3d at 801-02.

PHC is a Georgia corporation with its principal place of business in Tustin, California.  Am. Compl. ¶ 9.  PHC owned and operated numerous hospitals in Los Angeles and Orange County.  <u>Id.</u>  L.A. Hospital is a California corporation with its principal place of business in Los Angeles, California.  <u>Id.</u> at ¶ 10.

Corporate Defendants' contacts with California were "substantial" in that both of their principal places of business were in California.  The Court has general jurisdiction over Corporate Defendants.

b.  *Subject Matter Jurisdiction is Proper*

The Court has subject matter jurisdiction over the matter as Plaintiff's claims allege violations of the False Claims Act arising under 31 U.S.C. § 3730.  See Am. Compl.  This Court has pendent jurisdiction over Plaintiff's retaliation claims pursuant to California's False Claims Act - California Government Code § 12653(b), California's Health and Safety Code § 1278.5, constructive discharge in violation of public policy, and California Labor Code § 1102.5 because under 31 U.S.C. § 3732(b), this Court "shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730."  Additionally, where the district court has original jurisdiction, the district court shall also "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367.

c.  *Service of Process is Proper*

Plaintiff has proffered the requisite Proofs of Service [39, 44, 45, 214, 249].  The Proofs of Service

show Corporate Defendants were properly served with the Summons, Amended Complaint, the Court's order striking Corporate Defendants' Answer and ordering the Clerk to enter default against Corporate Defendants, and the present Motion.  Thus, service of process is complete and proper.

    2.   <u>Plaintiff has Satisfied the Procedural Requirements for Default Judgment</u>

Plaintiff has satisfied all of the procedural requirements to grant default judgment.  Plaintiff's application includes the identity of the party that default was entered against, Corporate Defendants, and when default was entered against Corporate Defendants, May 9, 2016.  Holloway Decl. ¶¶ 2-3, ECF No. 246-1. Plaintiff's application identifies the pleading to which default was entered—the Amended Complaint.  <u>Id.</u> at ¶ 3.  As Corporate Defendants are corporations, they are neither an infant or incompetent person, nor subject to the Servicemembers Civil Relief Act.  <u>Id.</u> at ¶¶ 4-7.  Corporate Defendants were served with the Motion for Default Judgment on July 18, 2016 at their last known address, more than seven days before the hearing.  Fed. R. Civ. P. 55(b)(2); ECF No. 249.

    3.   <u>Plaintiff has Satisfied the Substantive Requirements for Default Judgment</u>

In support of its Motion for Default Judgment, Plaintiff has sufficiently set forth "(1) the possibility of prejudice to plaintiff, (2) the merits

11

of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." Eitel, 782 F.2d at 1471-72.

a.  *Risk of Prejudice to Plaintiff*

The first Eitel factor "considers whether plaintiff will suffer prejudice if default judgment is not entered." Landstar Ranger, Inc. v. Parth Enter., Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

Corporate Defendants' counsel withdrew at Corporate Defendants' request. See Mot. to Withdraw. Despite orders from the Court that Corporate Defendants obtain and notify the Court of new counsel, they failed to do so. Corporate Defendants are corporations and cannot appear *pro se*. See Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993). Corporate Defendants' Answer to Plaintiff's Amended Complaint was stricken, thus placing Corporate Defendants in default. ECF Nos. 214-15.

Plaintiff argues that if default judgment is not granted, Plaintiff will be denied the right to judicial resolution of the retaliation claims and will not have a means of recovery for the damages she suffered. Mot. 9:8-12. If a plaintiff would likely be without a different recourse for recovery, there is greater

potential for prejudice favoring granting default judgment.  <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, Plaintiff will be prejudiced if partial default judgment is not granted.  This factor supports granting default judgment.

  b. *The Merits of Plaintiff's Substantive*

    *Claims and Sufficiency of the Complaint*

 To satisfy these two factors, Plaintiff must "state a claim on which the [plaintiff] may recover." <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978). "Under an [<u>Eitel</u>] analysis, [these factors] are often analyzed together." <u>Tate v. Molina</u>, 2015 U.S. Dist. LEXIS 3607, at *5 (C.D. Cal. Jan. 9, 2015)(quoting <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)).

  i. *Plaintiff has Asserted a Meritorious*

    *Claim of a Violation of the False*

    *Claims Act Pursuant to 31 U.S.C. §*

    *3730(h) and California's False Claims*

    *Act § 12653(b)*

 "The False Claims Act protects 'whistle blowers' from retaliation by their employers." <u>Moore v. California Inst. of Tech. Jet Propulsion Lab.</u>, 275 F.3d 838, 845 (9th Cir. 2002).  The False Claims Act makes it illegal for an employer to retaliate against an employee by discharging, demoting, suspending, threatening, or harassing an employee because the

employee engaged in lawful acts such as investigating possible violations of the False Claims Act.   Id.

To raise a successful retaliation claim under the False Claims Act and California's False Claims Act, an employee must prove: "(1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity."   Id.

To prove an employee engaged in protective activity, an employee must show that: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."   Id.   Here, Plaintiff reasonably believed and investigated that Corporate Defendants were using unlawful 5150 holds and fake "voluntary" admissions to commit patients to psychiatric units in order to fraudulently bill Medicare and Medi-Cal.   Am. Compl. ¶¶ 260, 265-69; Mot. 10:21-24.   Plaintiff was pressured to falsify 5150 holds, even if patients did not meet the criteria.   Am. Compl. ¶¶ 28, 168, 170-73. Protected activity will be found if an employee reasonably believes that their employer is possibly committing fraud against the government.   Layton v. Terremark N. Am., LLC, 2014 U.S. Dist. LEXIS 77694, at *12-14 (N.D. Cal. June 5, 2014).   Plaintiff has alleged

sufficient facts to show she engaged in protected
activity.

Further, Corporate Defendants were aware that
Plaintiff engaged in protected activity.  Macias Decl.
2:1-3; Am. Compl. ¶¶ 174-75, 183.  Two doctors at
LAMMC, Drs. Markie and Mallare, threatened Plaintiff
with less evaluation calls if she did not approve 5150
holds on all patients.  Am. Compl. ¶ 174.  Plaintiff
complained to the director of PET at LAMMC about
doctors pressuring Plaintiff to falsify 5150 documents.
Id.; Mot. 12:4-6.  Plaintiff told numerous LAMMC
administrators about the scheme and retaliation.  Am.
Compl. ¶¶ 220, 284, 286, 290; Mot. 12:11-17.  Plaintiff
has set forth sufficient facts to show Corporate
Defendants were aware Plaintiff engaged in protected
activity.

"Finally, the employer must have discriminated
against the employee because she engaged in protected
activity."  U. S. ex rel. Zemplenyi v. Group Health
Coop., 2011 U.S. Dist. LEXIS 21664, at *10 (W.D. Wash.
Mar. 3, 2011)(holding plaintiff's allegations, if taken
as true, show she was discriminated against because she
was given negative performance reviews and was
investigated with no opportunity to defend herself).
Facts in a complaint "are deemed admitted by virtue of
the default judgment."  Danning, 572 F.2d at 1389.
Here, Plaintiff alleged in the Amended Complaint that
she was threatened, harassed, and verbally abused for

15

refusing to falsify 5150 holds.  Am. Compl. ¶¶ 168,
170, 173-74, 183; Mot. 13:11-12.  Plaintiff was no
longer called to certain facilities for evaluations,
was scrutinized and written-up based on false
accusations, was removed from the schedule, and
replaced by individuals willing to falsify documents.
Am. Compl. ¶¶ 180, 291, 294, 300-01; Mot. 13:16-25.
Plaintiff was discriminated against by Corporate
Defendants while she engaged in protected activity.

     For the foregoing reasons, Plaintiff would be
successful on her Federal and California False Claims
Act claims.

>                    ii. *Plaintiff has Asserted a Meritorious*
>                         *Claim of a Violation of California*
>                         *Health and Safety Code § 1278.5*

     The legislative intent of California Health and
Safety Code § 1278.5 is to "encourage patients, nurses,
members of the medical staff, and other health care
workers to notify government entities of suspected
unsafe patient care and conditions."  Cal. Health &
Safety Code § 1278.5(a).  Employers may not retaliate
against an employee who complains about unsafe
practices.  Id. at § 1278.5(b)(1).  Employees need to
be protected when reporting dangerous patient
conditions.  Fahlen v. Sutter Cent. Valley Hosps., 145
Cal. Rptr. 3d 491, 498 (Cal. Ct. App. 2012) review
granted and opinion superseded on other grounds, Fahlen
v. Sutter Cent. Valley Hosps., 168 Cal. Rptr. 3d 165

(2012).

To prove retaliation under § 1278.5, an employee must show she engaged in protected activity, was then subjected to an adverse employment action, and there is a causal link between the two.  <u>Jadwin v. Cnty. of Kern</u>, 610 F. Supp. 2d 1129, 1144 (E.D. Cal. 2009). Here, as discussed above, Plaintiff engaged in protected activity in reasonably believing and investigating false 5150 hold documentation and fraudulent billing to Medicare and Medi-Cal.  Am. Compl. ¶¶ 260, 265-69; Mot. 10:21-24.  Plaintiff was thereafter subjected to an adverse employment action by being threatened, harassed, and taken off of the schedule to perform 5150 evaluations.  Am. Compl. ¶¶ 180, 291, 294, 300-01; Mot. 13:16-25.  There is a causal link between the two because Plaintiff received less evaluation calls and her schedule changed after she refused to falsify 5150 hold documents. Plaintiff's actions fall under the protection of the legislative intent of the statute of being retaliated against for reporting unsafe patient conditions. Plaintiff tried to protect patients by refusing to falsify 5150 hold documents, stop individuals who engaged in the conduct from receiving kickbacks, and reduce fraudulent billing to Medicare and Medi-Cal.

Similarly, in <u>Mendiondo v. Centinela Hosp. Medical Center</u>, 521 F.3d 1097, 1105 (9th Cir. 2008), the plaintiff alleged unsafe practices as defendants

engaged in unnecessary catheterizations and used single instead of biventricular pacemakers to bill more to Medicare.  After plaintiff complained about the practices, plaintiff alleged she was terminated.  <u>Id.</u> There, the plaintiff was retaliated against for her conduct.  <u>Id.</u>  Similarly here, Plaintiff has shown she engaged in protected activity and was subjected to an adverse employment action.  As there is a causal link between the two, Plaintiff has alleged sufficient facts to prove a violation of California Health and Safety Code § 1278.5.

> ### iii. *Plaintiff has Asserted a Meritorious Claim of a Violation of California Labor Code § 1102.5*

California Labor Code § 1102.5(b) provides that: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency, to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."  Cal. Lab. Code § 1102.5.

Whether an employer has violated California Labor Code § 1102.5, requires: "(1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for

its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation." <u>Patten v. Grant Joint Union High Sch. Dist.</u>, 134 Cal. App. 4th 1378, 1384 (Cal. Ct. App. 2005).

To establish a prima facie case of retaliation, an employee must show: "1) [s]he engaged in protected activity; (2) h[er] employer thereafter subjected h[er] to an adverse employment action; and (3) a causal link between the two." <u>Mokler v. Cnty. of Orange</u>, 68 Cal. Rptr. 3d 568, 580 (Cal. Ct. App. 2007) (quoting <u>Patten v. Grant Joint Union High Sch. Dist.</u>, 37 Cal. Rptr. 3d 113, 117 (Cal. Ct. App. 2005)).

As discussed above, Plaintiff has pled sufficient facts to prove she engaged in protected activity.  Am. Compl. ¶¶ 260, 265-69; Mot. 10:21-24. Plaintiff has also alleged sufficient facts to prove she was discriminated against by Corporate Defendants.  Am. Compl. ¶¶ 168, 170, 173-74, 183; Mot. 13:11-12. Plaintiff was no longer allowed at certain facilities for evaluations, was monitored closer than other employees based on false accusations, and was eventually completely removed from the schedule.  Am. Compl. ¶¶ 180, 291, 294, 300-01; Mot. 13:16-25.  There is a clear causal link between the two because Plaintiff would have continued to receive evaluation calls had she approved 5150 holds on all patients.

Plaintiff has proven the first element of retaliation.  The next two elements do not apply

because Corporate Defendants failed to put forth any evidence to dispute Plaintiff engaged in protected activity and failed to put forth a "legitimate, nonretaliatory explanation for their acts" by virtue of this default. <u>Patten</u>, 37 Cal. Rptr. 3d at 117. Therefore, Plaintiff is not required to provide an explanation that Corporate Defendants' acts were "merely a pretext for retaliation." <u>Id.</u>

To establish wrongful termination in violation of public policy, Plaintiff must establish that "she was terminated based on her complaints about potentially false billing practices and/or substandard patient care." <u>Mendiondo</u>, 521 F.3d at 1105; <u>see</u> <u>Haney v. Aramark Unif. Servs., Inc.</u>, 121 Cal. App. 4th 623, (Cal. Ct. App. 2004). The same facts that establish a retaliation claim may also support a claim for wrongful termination in violation of public policy. <u>Id.</u>

Here, Plaintiff alleged she was constructively discharged from her employment. Proving constructive discharge is an objective question and "occurs when the employer's conduct effectively forces an employee to resign." <u>Colores v. Bd. of Trustees</u>, 105 Cal. App. 4th 1293, 1304-05 (Cal. Ct. App. 2003). An employee must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position

would be compelled to resign." Id. at 1304-06.  Here,
Plaintiff has established she was constructively
discharged.  Plaintiff was threatened with reduced
evaluation calls and termination if she continued to
complain about the falsified 5150 documents.  Am.
Compl. ¶¶ 293, 289-90.  The threats continued after
Plaintiff filed a gender and age discrimination and
retaliation claim with PHC's compliance hotline and
LAMMC's CEO.  Plaintiff was monitored closer than other
employees from 2010 to 2012 and her schedule was
changed despite her supervisor's knowledge that
Plaintiff could not cover the new schedule.  Id. at ¶¶
291, 293.  Plaintiff was also written up for
deficiencies in her work based on false allegations.
Id. at ¶ 294.

As a result of these working conditions, Plaintiff
was placed on temporary disability by her doctor in
March 2011.  Id. at ¶ 295.  She went back to work after
ten weeks, and it took administrators at LAMMC over a
month to put her back on the schedule.  Id. at ¶ 297.
When Plaintiff was finally put back on the schedule,
she was given even fewer calls.  Id. at ¶ 298.  As a
result of the retaliation, Plaintiff's pay was reduced
to about one quarter of what she previously earned.
Id.  Plaintiff was banned from going to various
facilities for her failure to initiate 5150 holds.  Id.
at ¶ 301.  After Plaintiff was not scheduled at all for
June or July, she sent a letter to LAMMC indicating she

was constructively terminated. Id. at ¶ 312. LAMMC wrote back stating that she was not fired, but they made no efforts to resolve any issues or place Plaintiff back onto the schedule. Id. at ¶ 313. Any reasonable person in Plaintiff's position, would have reasonably believed they were terminated based on Corporate Defendants' actions.

In sum, Plaintiff has sufficiently alleged all of her claims in the Amended Complaint and Plaintiff's claims are accordingly likely to succeed on the merits. The second and third Eitel factors weigh in favor of granting default judgment.

c. *The Sum of Money at Stake in the Action*

"Under the [fourth] Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176. "While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages." Moroccanoil, Inc. v. Allstate Beauty Prod., Inc., 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012); see Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiff requests $1,007,674 for double-back pay and pre-judgment interest which has been compounded annually, $500,000 for emotional distress, and $7,385 for moving expenses, totaling a judgment request of $1,515,059. Mot. 2:4-7. The Federal Claims Act

pursuant to 31 U.S.C. § 3730(h) and California Government Code § 12653 both hold that an employee is entitled to relief which "shall include . . . two times the amount of back pay, interest on the back pay and compensation for any special damages sustained as a result of the discrimination."  31 U.S.C. § 3730(h)(2); Cal. Gov't Code § 12653(b).

Plaintiff has requested a significant amount of money in light of Corporate Defendants' conduct, which weighs against granting default judgment.  Default judgment is disfavored when a large amount of money is involved or the requested amount is unreasonable in light of the loss caused by the defendant's actions. Vogel, 992 F. Supp. 2d at 1012.  The Court has significant discretion to determine the amount of damages to be awarded.  See Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 712 (9th Cir. 1999); Moroccanoil, 847 F. Supp. 2d at 1202.  Because the Court has discretion in awarding any damages, the Court can ensure that any award will correspond to "the seriousness of the defendant's conduct."  PepsiCo, 238 F. Supp. 2d at 1176.

Although Plaintiff has requested a large sum of money, this factor does not necessarily weigh against granting default judgment.

> d.   *The Possibility of a Dispute Concerning the Material Facts*

It is not clear whether there would be any dispute

of material fact in the present case, as Corporate Defendants have not obtained replacement counsel or properly answered Plaintiff's Amended Complaint or present Motion.  "Upon default the factual allegations in the complaint, except those relating to the amount of damages, will be taken as true." Geddes, 559 F.2d at 560.  Corporate Defendants' previous appearance in the action suggests there was a dispute, however their failure to obtain new counsel and appear favors granting default judgment. LegalZoom.com v. Macey Bankruptcy Law, P.C., No. 2:13-cv-8620-ODW(MRWx), 2014 WL 961832, at *4 (C.D. Cal. 2014).  In LegalZoom.com, the district court found that the defendants' previous appearance in the suit suggested there may have been a dispute, however their failure to obtain new counsel after their counsel withdrew, "now swings the pendulum back toward entry of default judgment" and no possibility of dispute concerning material facts.  Id. This factor weighs in favor of granting default judgment.

> e.   *Whether Defendant's Default was the Product of Excusable Neglect*

The determination of whether there is a showing of excusable neglect, "is at bottom an equitable one, taking account . . ., prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the

24

movant, and whether the movant acted in good faith." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380, 395 (1993).  The court in <u>LegalZoom.com</u> held that the defendants were given "ample opportunity to obtain new counsel and have received notice of this Court's intention to enter default judgments. Defendants have been radio silent." <u>LegalZoom.com</u>, 2014 WL 961832 at *4.  Here, Corporate Defendants were given sufficient time to obtain new counsel after their previous counsel withdrew at their request, and Corporate Defendants have failed to put forth any evidence that their default is the result of excusable neglect.  This factors weighs in favor of granting default judgment.

> f.   *The Strong Public Policy Favoring Decisions on the Merits*

The final factor, the public policy favoring a decision on the merits, weighs against granting default judgment.  <u>Id.</u>  There is a strong public policy that "cases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>, 782 F.2d at 1472. However, the preference to do so, "standing alone, is not dispositive."  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177. The court in <u>PepsiCo</u> stated that "[d]efendant's failure to answer [p]laintiffs' [c]omplaint makes a decision on the merits impractical if not impossible."  <u>Id.</u>  If a defendant has failed to defend an action, the case may be terminated before hearing the actual merits.  <u>Id.</u>

Here, Corporate Defendants previously appeared and
participated in the case and have failed to abide by
the Court's orders, which weighs in favor of granting
default judgment.  See Stanley Black & Decker, Inc. v.
D&L Elite Investments, LLC, No. C 12-04516 DC(LB), 2014
WL 3738327, at *14 (N.D. Cal. 2014).

Corporate Defendants have made it impractical and
impossible to make a determination on the merits
because of their failure to defend this action.  The
strong public policy favoring a decision on the merits
does not preclude the Court from granting default
judgment against Corporate Defendants.

4.   There is Just Reason to Delay Entering Default
Judgment Against Corporate Defendants

The general rule is that an "order disposing of
less than all claims is not a final judgment." In re
Maxim Integrated Products, Inc., No. 12-880, 2015 WL
867651, at *9 (W.D. Pa. Feb. 27, 2015).  When a party
seeks entry of final judgment against fewer than all
parties when there are multiple parties involved, the
court must expressly determine that there is no just
reason for delay.  Fed. R. Civ. P. 54(b).  If this is
not done, "any order or other decision, however
designated, that adjudicates fewer than all the claims
or the rights and liabilities of fewer than all the
parties does not end the action as to any of the claims
or parties." Id.

Courts have held that entering judgment against

fewer than all the parties who are similarly situated may have inconsistent results. <u>Johnson v. Cate</u>, No. 1:09-cv-00502-OWW-SMS, 2009 WL 1769621, at *2 (E.D. Cal. June 23, 2009). Entering default judgment against fewer than all defendants is disfavored even if the defendants are not jointly and severally liable, if they are similarly situated. <u>In re First T.D. & Inv., Inc.</u>, 253 F.3d 520, 532 (9th Cir.2001); <u>see also</u> <u>Garamendi v. Henin</u>, 683 F.3d 1069, 1082 (9th Cir. 2012). The Supreme Court has also hesitated to enter a final judgment against fewer than all the parties stating that "absurdity might follow" where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others." <u>Frow v. De La Vega</u>, 82 U.S. 552, 554 (1872).

While the factors in <u>Eitel</u> weigh in favor of entering judgment, judgment may nevertheless be deferred. "Even where the factors listed in <u>Eitel</u> suggest there is no just reason for delay, the Supreme Court has cautioned that the court should not enter a default judgment which is, or is likely to be inconsistent with a judgment on the merits as to any answering defendants." <u>Helton v. Factor 5, Inc.</u>, No. 10-04927 SBA, 2013 WL 5111861, at *5 (N.D. Cal. Sept. 12, 2013).

Here, succeeding on a retaliation claim in violation of the False Claims Act does not require

27

successfully proving a violation of the False Claims
Act.  U.S. ex rel. Satalich v. City of Los Angeles, 160
F. Supp. 2d 1092, 1108 (C.D. Cal. 2001).  However, as
Corporate Defendants are still parties to the case as
to the remaining causes of action, there is a risk of
inconsistent judgments and confusion as to the final
judgment.  Since Corporate Defendants previously
defended the case, there is a chance they may re-appear
leading to confusion with multiple judgments.
Additionally, if the remaining claims are ruled in
favor of Plaintiff, there would be a need for
additional default judgment requests with possible
multiple judgments and requests for attorney's fees
against Corporate Defendants.  Plaintiff has not set
forth sufficient facts showing there is no just reason
for delay.  In the interests of justice, and to
maintain continuity, there is just reason to delay
entering default judgment.

    5.  <u>Plaintiff is Entitled to $1,042,673.63 in</u>
       <u>Damages</u>

    Plaintiff requests $1,007,674 for double-back pay
and prejudgment interest which has been compounded
annually, $500,000 for emotional distress, and $7,385
for moving expenses, totaling a judgment request of
$1,515,059.  Mot. 2:4-7.

    The Federal Claims Act pursuant to 31 U.S.C. §
3730(h) and California Government Code § 12653 both
hold that an employee is entitled to relief if the

employee was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by the employee . . . to stop one or more violations." Cal. Gov't Code § 12653(a); 31 U.S.C. § 3730(h)(1). Relief "shall include . . . two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination." Cal. Gov't Code § 12653(b); 31 U.S.C. § 3730(h)(2). 31 U.S.C. § 3730(h)(2) also provides for litigation costs. <u>Id.</u> An employee who has been discriminated against pursuant to California Health and Safety Code § 1278.5(g) is entitled to: "reinstatement, reimbursement for lost wages and work benefits caused by the acts of the employer, and the legal costs associated with pursuing the case." Cal. Health & Safety Code § 1278.5.

> a. *Double Back Pay and Interest is Owed in*
> *the Amount of $1,007,673.63*

Plaintiff worked for LAMMC from 2003 to 2012. She earned $67,589 during her first full year of employment with LAMMC in 2004. Macias Decl. 1:24-27. In 2005 she earned $53,790; in 2006 she earned $39,041; in 2007 she earned $46,200; in 2008 she earned $47,820; in 2009 she earned $51,581; in 2010 she earned $54,184; in 2011 she earned $22,469; in 2012 she earned $4,004; and from 2013 to June 2016 she earned nothing because she was constructively discharged from LAMMC. <u>Id.</u> at 2:16-28.

While Plaintiff sets forth the income she believes she would have earned but for Corporate Defendants' retaliation, it is not certain that Plaintiff would have earned at least $67,589 every year because her income was based on the number of evaluations she completed.   It is possible Plaintiff would have completed less evaluations resulting in a lower income even if she did not face retaliation.   However, as Corporate Defendants have failed to defend this action, those uncertainties should cut in favor of Plaintiff. The Sixth Circuit has held that where back pay is owed, it should be awarded despite any uncertainty as to the exact amount.   Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 628 (6th Cir. 1983).   "When an employer's unlawful discrimination produces uncertainties as to the amount of backpay owing, they should be resolved against the wrongdoer."   Kawasaki Motors Corp., U.S.A. v. NLRB, 850 F.2d 524, 527 (9th Cir. 1988); Rasimas, 714 F.2d at 628.

Therefore, $67,589 is an appropriate baseline for what Plaintiff would have earned each subsequent year of employment but for the retaliation.   Corporate Defendants owe Plaintiff $456,526 in back pay.

Prejudgment is usually available to victims of federal law violations.   U.S. ex rel. Howard v. Urban Inv. Trust, Inc., No. 03 C 7668, 2013 WL 4501422, at *4 (N.D. Ill. Aug. 22, 2013).   The prime interest may be used to calculate the prejudgment interest.   Gorenstein

Enters., Inc. v. Quality-Care-USA, Inc., 874 F.2d 431, 437 (7th Cir. 1989).  When the statute does not provide the interest rate to be used, the prime rate is an appropriate calculator.  Id. at 436.  It is within the court's discretion whether to award compound or simple interest.  Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., 325 F.3d 924, 937 (7th Cir. 2003).  The norm in federal litigation is to compound prejudgment interest.  Id. at 937-38.  The interest should be compounded annually to make "the make plaintiff whole–a clear purpose of the remedial sections of 3730(h)."  Neal v. Honeywell, Inc., 995 F. Supp. 889, 897 (N.D. Ill. 1998).

Here, using the prime rate only on the back pay and compounded annually, the interest owed is $94,621.63.  Adding an additional $456,526 for the double back pay, the total double back pay and interest Corporate Defendants owe Plaintiff is $1,007,673.63.

b.  *$35,000 is an Appropriate Emotional Distress Damages Award*

Plaintiff is also requesting $500,000 in emotional distress damages.  Emotional distress damages are warranted in whistleblower cases.  Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 893 (8th Cir. 2000).  Plaintiff cites to non-whistleblower cases to justify a $500,000 award request.  Mot. 23:20-28.  The two cases Plaintiff cites to where emotional distress damages were awarded in whistleblower cases had more

egregious facts than this case and provided emotional distress awards of less than $500,000.  In <u>Neal v. Honeywell Inc.</u>, 191 F.3d 827, 832 (7th Cir. 1999), the plaintiff was awarded $200,000 in emotional distress damages after she was subjected to "ostracism, a year-long depression . . . upheaval in her life" and "threats of physical injury."  In <u>Townsend v. Bayer Corp.</u>, 774 F.3d 449, 466-67 (8th Cir. 2014), the court awarded $300,000 for emotional distress to a plaintiff who suffered from sleepless nights and had severe financial difficulty in supporting his family.

Plaintiff alleges she became withdrawn from friends and family, suffered from anxiety and depression, had nightmares, and moved to Kansas as a result of Corporate Defendants' actions.  Macias Decl. 5-7. While Plaintiff did suffer emotional distress as a result of Corporate Defendants' conduct, it does not rise to such an egregious level to award $500,000 for emotional distress.  Cases of sexual harassment and hostile work environment have awarded $300,000 in emotional distress claims because those cases "are likely to generate much higher emotional distress damages awards because of their personal and highly offensive nature than claims of retaliation based on whistleblower conduct."  <u>Bloomer v. Serco Management Services, Inc.</u>, No. EDCV 16-1655 JGB (RAOx), 2016 WL 4926409, at *4 (C.D. Cal. Sept. 15, 2016).  Here, Plaintiff was never physically threatened, did not face

sexual harassment, and did not suffer from dire financial straits.  $500,000 in emotional distress damages is excessive and $35,000 is more appropriate.

### c.  *Moving Expenses of $7,385 Are Not Appropriate*

Plaintiff seeks $7,385 in moving expenses she alleges were necessary to escape the harassment and emotional distress.  Macias Decl. 8:4-17.  Moving expenses may be awarded to "render plaintiff whole."  Neal, 995 F. Supp. at 895.  However, Plaintiff did not move out of state because that was the only location where she could find employment because of Corporate Defendants' retaliation.  Plaintiff moved out of state to be closer to her family and she subsequently found employment.  Macias Decl. 8:12-14.  Therefore, Plaintiff is not entitled to moving expenses.

### d.  *Post-Judgment Interest is Appropriate*

Plaintiff seeks post-judgment interest from the date of judgment until Corporate Defendants satisfy the judgment.  Mot. 24:11-14.  "[P]ost-judgment interest on a district court judgment is mandatory."  Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995).  Interest is calculated from the date judgment is entered "at a rate equal to the weekly average 1-year constant maturity Treasury yield . . .for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.  The interest rate will be determined when judgment is entered.

6.  <u>Plaintiff's Request for the Right to Amend or</u>
    <u>Seek Default Judgment and Request to Delay</u>
    <u>Filing A Motion for Attorney's Fees is Denied</u>
    <u>as Moot as the Entry of Judgment is Deferred</u>

Plaintiff requests the right to seek and/or amend default judgment against Corporate Defendants as to the remaining causes of action when those claims are adjudicated.  Mot. 24:17-25.  If default judgment is appropriate against Corporate Defendants for the remaining causes of action, Plaintiff may file a Motion for Default Judgment when those claims are adjudicated.

A motion for attorney's fees must be filed within fourteen days of when judgment is entered.  Fed. R. Civ. P. 54(d)(2)(B)(i).  Plaintiff should file their motion for attorney's fees when judgment is entered within the time prescribed by the statute.

### III.   CONCLUSION

This Court **GRANTS** Plaintiff's Motion for Partial Default Judgment against Pacific Health Corporation and Los Angeles Doctors Hospital Corporation as to Plaintiff's fifth, ninth, tenth, and eleventh claims. The Court finds $1,042,673.63 is an appropriate damages award.  Entry of judgment is deferred until the case is resolved in its entirety.

**IT IS SO ORDERED.**

DATED: October 7, 2016      s/ RONALD S.W. LEW

                            **HONORABLE RONALD S.W. LEW**

                            Senior U.S. District Judge

34