# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA ex rel. JULIE A. MACIAS, <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC HEALTH CORPORATION, a Georgia corporation; LOS ANGELES DOCTORS HOSPITAL CORPORATION, a California corporation; SGG, INC., a California corporation; PROCARE MOBILE RESPONSE LLC, a California limited liability company; KAREN TRIGGIANI, an individual; ROBERT BARRETT, an individual; KEIVAN GOLCHINI, M.D., an individual; FARHAD KHOSSOUSSI, M.D., an individual; ALAN MARKIE, M.D., an individual; and LITOS O. MALLARE, M.D., an individual, <br><br> Defendants. | CV 12-00960-RSWL-AJWx <br><br> **ORDER RE: DEFENDANT FARHAD KHOSSOUSSI, M.D.'S MOTION TO EXCLUDE EXPERT TESTIMONY** [351]**; DEFENDANT FARHAD KHOSSOUSSI, M.D.'S MOTION FOR SUMMARY JUDGMENT** [349]**; RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT** [348] |

Currently before the Court is Defendant Farhad

Khossoussi, M.D.'s ("Dr. Khossoussi") Motion for Summary Judgment [349] and Motion to Exclude Expert Testimony of Michael Arrigo [351] ("Motion to Exclude"), and Relator Julie Macias' ("Relator") Motion for Partial Summary Judgment as to Affirmative Defenses [348] ("Motion for Partial Summary Judgment"). Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS in part and DENIES in part** Dr. Khossoussi's Motion to Exclude, **GRANTS** Dr. Khossoussi's Motion for Summary Judgment, and **DENIES as MOOT** Relator's Motion for Partial Summary Judgment.

## I. BACKGROUND

**A.   Factual Background**

Relator was a registered nurse on the Psychiatric Evaluation Team ("PET") at the Los Angeles Metropolitan Medical Center ("LAMMC"). Am. Compl. ¶ 6, ECF No. 31. From April 2003 to July 2012, Relator was employed as a member of LAMMC's PET to conduct psychiatric evaluations for involuntary commitments pursuant to California Welfare and Institutions Code section 5150 ("5150 holds"). Id. ¶ 162.

SGG Inc. ("SGG") was a California corporation with its principal place of business in San Marino, California. Id. ¶ 12. SGG was primarily engaged in the health services industry, including hospital marketing. Id. Karen Triggiani ("Triggiani") is an individual who founded SGG in 1997 and was its sole

shareholder from March 20, 1998 until August 15, 2007.
Id.  Robert Barrett ("Barrett") is Triggiani's husband,
who was the sole shareholder of SGG from December 27,
2007 to August 1, 2009.  Id.  Keivan Golchini, M.D.
("Dr. Golchini") is a doctor specializing in internal
medicine, who was the sole shareholder of SGG from
August 1, 2009 through December 26, 2012 when SGG was
dissolved.  Id. ¶¶ 12, 16.  Triggiani was excluded from
Medicare on June 19, 2008 after being convicted of
conspiracy to commit Medicare fraud.  Id. ¶ 217.

Dr. Khossoussi is a practicing psychiatrist who was
granted privileges to practice in the psychiatry
department at LAMMC.  Decl. of Farhad Khossoussi, M.D.
in Supp. of Mot. for Summ. J. ("Khossoussi Decl.")
¶¶ 2-3, ECF No. 353.

Allegedly, pursuant to a sham contract with LAMMC,
SGG (and in particular Triggiani) would recruit
patients from outside facilities and refer them to
LAMMC in exchange for kickback payments.[1]  Am. Compl.
¶¶ 204-211.  Relator alleges that Dr. Khossoussi
admitted and treated these patients knowing the
referrals were in exchange for kickbacks.  Id. ¶ 327.

---

[1] In her Amended Complaint, Relator also alleges that
beginning in 2004, Defendants began using involuntary 5150 holds
to bring patients into LAMMC's locked psychiatric units so that
LAMMC could bill Medicare and Medi-Cal for inpatient psychiatric
services.  Id. ¶ 24.  These psychiatric holds, Relator alleges,
had no medical basis.  Id. ¶¶ 272-281.  However, Relator has
since abandoned these "medically unnecessary 5150 holds"
allegations.  See Relator's Opp'n to Def.'s Mot. for Summ. J.
("Opp'n to Mot. for Summ. J.") 7 n.6, ECF No. 400.

Dr. Khossoussi, according to Relator, then billed to government healthcare programs the services he provided to these patients.  Id.  Relator further alleges that Dr. Khossoussi continued to use SGG's and Triggiani's services even after Triggiani was convicted of conspiracy to commit Medicare fraud and excluded from Medicare.  Id. ¶¶ 212-264.  Relator alleges that LAMMC and Dr. Khossoussi also attempted to conceal Triggiani's continued involvement.  Id.

**B.  Procedural Background**

Relator filed the original Complaint [1] in this Action on February 3, 2012, naming Pacific Health Corporation ("PHC"), Los Angeles Doctors Hospital Corporation ("LADHC"), and SGG as Defendants.  The United States declined to intervene on May 22, 2013.  See U.S.'s Notice of Election to Decline Intervention, ECF No. 19.

On August 20, 2013, Relator filed an Amended Complaint [31] in this Action, newly naming PROCare Mobile Response LLC ("PROCare"), Triggiani, Barrett, Dr. Golchini, Dr. Khossoussi, Alan Markie, M.D. ("Dr. Markie"), and Litos O. Mallare, M.D. ("Dr. Mallare") as Defendants.[2]  The State of California declined to intervene on February 11, 2014.  See Cal.'s Notice of Election to Decline Intervention, ECF No. 36.  As a result, the Court ordered that the seal be lifted and

---

[2] Following stipulation, the Court dismissed Drs. Markie and Mallare on September 21, 2017.  See ECF Nos. 335, 336.

4

that the Complaint and Amended Complaint be served on Defendants.  See Order re Unsealing of Compl., ECF No. 37.

Dr. Khossoussi filed his Motion for Summary Judgment [349] and Motion to Exclude [351] on November 10, 2017.  Relator filed her Motion for Partial Summary Judgment [348] that same day.  Relator and Dr. Khossoussi filed their Oppositions [396, 398, 400] to each other's respective Motions on December 15, 2017. Relator and Dr. Khossoussi filed Replies [418, 420, 424] in support of their Motions on January 8, 2018.

## II. DISCUSSION

### A.  **Legal Standard**

1.  Motion to Exclude Expert Testimony

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).  Testimony is relevant if it will assist the trier of fact in understanding a fact at issue.  Id. at 591-92.  As to the reliability requirement, the court must act as a "gatekeeper" to exclude "junk science" by making a preliminary determination that the expert's testimony is reliable.  Id.  Expert testimony must be the product of: (1) sufficient facts or data, (2) reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case.  Fed. R. Evid. 702.

The court must determine whether the testimony has

"a reliable basis in the knowledge and experience of [the relevant] discipline." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 149 (1998)(quoting <u>Daubert</u>, 509 U.S. at 592). The court examines the data and methodology that form the bases for the expert's opinion and has broad discretion in determining the reliability of such opinions. <u>Id.</u> at 152.

    2. <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56(a), the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact." <u>See Nissan Fire &</u>

6

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Id.; see Fed. R. Civ. P. 56(a). Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The standard for a motion for summary judgment "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact." Anderson, 477 U.S. at 247-48.

**B.  Analysis**

  1.  Motion to Exclude

Mr. Arrigo offers two opinions regarding Dr. Khossoussi in the form of damages calculations. The first opinion is, essentially, that it was impossible for Dr. Khossoussi to work the hours for which he billed. See Decl. of Eric Grover in Supp. of Relator's Opp'n to Mot. to Exclude ("Grover Mot. to Exclude Opp'n Decl."), Ex. 1 ("Arrigo Report") at 72, ECF No. 398-2. The second opinion involves the damages attributable to

(1) the claims Dr. Khossoussi submitted, or caused
LAMMC to submit, for patients Triggiani referred
pursuant to the alleged kickback scheme and (2) for
case management and discharge planning services
Triggiani allegedly provided to Dr. Khossoussi's
patients in violation of her Medicare exclusion.  Id.
at 14.

      a.  *Mr. Arrigo's Opinion Regarding Hours*
        *Worked*

In his Report, Mr. Arrigo opines that it was
impossible for Dr. Khossoussi to work the 402,850
minutes he billed over a six-and-a-half-year period.
See id. at 72.  However, Relator fails to allege in the
Amended Complaint that Dr. Khossoussi was unable to
work the time he billed to Medicare.

Further, Dr. Khossoussi argues that Mr. Arrigo's
opinions regarding the possibility of Dr. Khossoussi
working the time he billed are unfounded and irrelevant
to Relator's remaining claims.  Because Relator has
failed to offer any opposition to these arguments, any
opposition is waived.  See Zixiang Li v. Kerry, 710
F.3d 995, 1000 (9th Cir. 2013)("[A] party waives an
argument by failing to make it before the district
court . . . ." (citation omitted)).  Accordingly, the
Court **GRANTS in part** Dr. Khossoussi's Motion to Exclude
and excludes any testimony from Mr. Arrigo regarding
his opinion that it was impossible for Dr. Khossoussi
to work the time he billed to Medicare.

### b. *Mr. Arrigo's Opinion Regarding False Claims*

Dr. Khossoussi also argues that Mr. Arrigo's statements that there "may be" false claims are hypotheses, not opinions. See Def.'s Mot. to Exclude Expert Test. ("Mot. to Exclude") 4:7-10, ECF No. 351. Because Mr. Arrigo did not definitively state whether a false claim existed, Dr. Khossoussi argues that the Court should exclude any of Mr. Arrigo's damages calculations premised on these potentially false claims. Id. at 4:10-14. However, as Relator counters, Relator did not ask Mr. Arrigo to opine regarding whether the claims LAMMC and Dr. Khossoussi submitted to Medicare were fraudulent or false. See Relator's Opp'n to Def.'s Mot. to Exclude ("Opp'n to Mot. to Exclude") 8:14-17, ECF No. 398. Mr. Arrigo is a damages expert, not a liability expert. Nowhere in Mr. Arrigo's Report does he attempt to opine about the falsity of claims. Rather, for purposes of his damages calculations, he assumes, based on Relator's allegations, that certain claims were false. The determination of whether to exclude Mr. Arrigo's testimony therefore depends on the methodology he used to calculate his damages, regardless of whether the conclusion he reached was unfavorable to Dr. Khossoussi. See United States ex rel. Jordan v. Northrop Grumman Corp., No. CV 95-2985 ABC (EX), 2003 WL 27366224, at *5 (C.D. Cal. Jan. 6, 2003).

Dr. Khossoussi next argues that Mr. Arrigo lacks the education, training, and experience to make a determination of the existence of fraud. Mot. to Exclude 6:1-4. However, as explained, Mr. Arrigo is not acting as an expert on liability and the existence of Medicare fraud; rather, he is a damages expert. In Mr. Arrigo's Report, he (1) identified claims based on their connection to SGG, Triggiani, and Dr. Khossoussi, (2) matched the medical number and claim number with the Medicare claims data Relator's counsel provided, and (3) then calculated the potential damages related to these allegedly false claims. <u>See</u> Arrigo Report 47-52.

To perform these calculations and provide opinions on the estimated damages, Mr. Arrigo did not need specific education or experience in assessing Medicare fraud. Despite what Dr. Khossoussi may argue, the Federal Rules of Evidence do not require particular credentials for an expert witness. <u>See</u> <u>Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.</u>, 223 F.3d 585, 591 (7th Cir. 2000)(finding that the Federal Rules of Evidence "do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character" (citations omitted)). "Anyone with relevant expertise enabling him to offer responsible

opinion testimony helpful to judge or jury may qualify
as an expert witness." Id. (citing Fed. R. Evid. 702).

Mr. Arrigo clearly has the relevant qualifications
necessary to provide an opinion regarding the potential
damages from submission of allegedly false claims. Mr.
Arrigo has experience in both state and federal court
providing expert opinions that involved medical
billing, coding, Medicare, and Medi-Cal. See Arrigo
Report, Ex. F. Mr. Arrigo also has training in medical
coding and billing reimbursement, and he has spoken on
the topic of electronic health records. See Grover
Mot. to Exclude Opp'n Decl., Ex. 2. Accordingly, the
Court finds that Mr. Arrigo has sufficient specialized
knowledge to provide an opinion on the potential
Medicare damages.[3] See United States v. Abonce-Barrera,
257 F.3d 959, 964 (9th Cir. 2001)("[I]n considering the
admissibility of testimony based on some 'other
specialized knowledge,' Rule 702 generally is construed
liberally." (internal quotations omitted)).

ii. *Mr. Arrigo's Methodology*

Finally, Dr. Khossoussi challenges Mr. Arrigo's
Report on the basis that Mr. Arrigo did not reach his
conclusions using a reliable methodology since Mr.
Arrigo relied wholly on the assumption that the claims
were false. Mot. to Exclude 19:17-25. As noted, Mr.

---

[3] Again, because Mr. Arrigo is not providing an opinion
regarding the falsity of the claims Dr. Khossoussi submitted, or
caused LAMMC to submit, he does not need specialized knowledge
regarding Medicare fraud.

Arrigo was asked to opine on the potential damages, not the falsity of the claims submitted.  Mr. Arrigo's "reliance on assumptions provided by counsel . . . is not a bar to [his] testimony." <u>Jordan</u>, 2003 WL 27366224, at *6.  As Mr. Arrigo is serving as a damages expert for Relator, "it would be incongruous for [Mr. Arrigo] to assume a set of facts in conflict with [Relator's] case." <u>Id.</u> at *5.  Importantly, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010).  Therefore, should Dr. Khossoussi wish to attack the assumptions upon which Mr. Arrigo based his opinions, a motion to exclude Mr. Arrigo's testimony is not the proper avenue. <u>See United States v. L.E. Cooke Co.</u>, 991 F.2d 336, 342 (6th Cir. 1993)(finding mere "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility").

Dr. Khossoussi argues that Mr. Arrigo's opinions are unnecessary to help the jury because his opinions are based solely on simple math the jury could perform. Def.'s Reply in Supp. of Mot. to Exclude 10:3-5, ECF No. 424.  However, Mr. Arrigo's opinions do not boil down to simple math.  As Mr. Arrigo notes in his Report, he calculated the potential damages by first reviewing patient medical records and Medicare bills

Relator's counsel provided and matching patient medical numbers in these records. Arrigo Report 47-52. Mr. Arrigo needed to have knowledge about Medicare billing practices as well as billing codes and the breakdown of medical billing. Therefore, Mr. Arrigo's opinion is not so simple. Reviewing thousands of pages of medical records and billing is a complicated and time-intensive endeavor. Mr. Arrigo's review of these documents and opinions based on such documents will be helpful to the finder of fact. See United States ex rel. Jordan v. Northrop Grumman Corp., No. CV 95-2985 ABC (EX), 2003 WL 27366881, at *7 (C.D. Cal. Jan. 6, 2003); see also Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d 991, 999-1000 (N.D. Ill. 2001)(finding ten-page expert report regarding potential damages was "not simple arithmetic"). Accordingly, the Court finds that Mr. Arrigo's opinions regarding the potential damages attributable to the alleged kickback scheme and Triggiani's provision of services in violation of her Medicare exclusion are admissible. The Court **DENIES in part** Dr. Khossoussi's Motion to Exclude with respect to such opinions.

    2.   Dr. Khossoussi's Motion for Summary Judgment

        a.  *Evidentiary Objections*

Dr. Khossoussi asserts numerous evidentiary objections to the exhibits Relator filed in support of her Opposition to Dr. Khossoussi's Motion for Summary Judgment. See Def.'s Evid. Objs., ECF No. 423. The

Court **OVERRULES** Dr. Khossoussi's evidentiary objections
because they "are boilerplate and devoid of any
specific argument or analysis as to why any particular
exhibit or assertion in a declaration should be
excluded." United States v. HIV Cat Canyon, Inc., 213
F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); see also
Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp.
2d 1023, 1033 (C.D. Cal. 2013)(refusing to "scrutinize
each objection and give a full analysis of identical
objections"); Capitol Records, LLC v. BlueBeat, Inc.,
765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010)(noting
that "it is often unnecessary and impractical" to
scrutinize "boilerplate recitations of evidentiary
principles or blanket objections" (citation omitted)).
Should the Court rely on any objected-to evidence in
ruling on Dr. Khossoussi's Motion for Summary Judgment,
the Court will address Dr. Khossoussi's objections as
they arise.  All other evidentiary objections are
**OVERRULED** because they lack merit or the Court does not
consider the evidence.

      b.  *Relator's FCA Claims*

Relator alleges causes of action under three
separate provisions of the FCA.[4]  Relator first alleges

---

[4] Relator alleges the same causes of action under three
provisions of the California False Claims Act ("CFCA").  The CFCA
was modeled after the FCA, and the analysis of Relator's FCA
claims will be identical to the analysis of Relator's CFCA
claims.  See United States v. Shasta Servs. Inc., 440 F. Supp. 2d
1108, 1111 (E.D. Cal. 2006)("Because of the similarity between
the two Acts, federal decisions are deemed persuasive authority

a cause of action under 31 U.S.C. § 3729(a)(1)(A), which creates liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  Relator then alleges a cause of action under § 3729(a)(1)(B), which creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Finally, Relator alleges a cause of action under § 3729(a)(1)(C), conspiracy to violate the FCA.

In alleging these three causes of action, Relator asserts three theories: (1) Dr. Khossoussi admitted patients Triggiani and SGG referred pursuant to a kickback arrangement, (2) Triggiani performed case management and discharge planning services for Dr. Khossoussi's patients after her exclusion from Medicare, and (3) Dr. Khossoussi conspired with LAMMC to commit the above fraudulent conduct.  Each theory will be discussed in turn.

i. *Kickback Scheme*

To avoid summary judgment, Relator must present a genuine issue of material fact as to each of the following elements: (1) Dr. Khossoussi made, or caused to be made, "a claim against the United States (2) that was false or fraudulent (3) with knowledge of the falsity or fraud."  <u>United States v. Kitsap Physicians</u>

---

in interpreting both state and federal provisions.").

15

<u>Serv.</u>, 314 F.3d 995, 1000 (9th Cir. 2002)(citation omitted). "A failure to raise a triable issue of fact as to any of these three elements justifies the summary judgment dismissal of" Relator's claims. <u>Id.</u> (citation omitted).

"Claims that result from unlawful kickbacks are false claims for purposes of the False Claims Act." <u>Mauss v. Nuvavsive, Inc.</u>, No. 13CV2005 JM (JLB), 2015 WL 10857519, at *9 (S.D. Cal. Aug. 28, 2015). Such claims are false because "courts, without exception, agree that compliance with the Anti-Kickback Statute is a precondition of Medicare payment, such that liability under the False Claims Act can be predicated on a violation of the Anti-Kickback Statute." <u>United States ex rel. Westmoreland v. Amgen, Inc.</u>, 812 F. Supp. 2d 39, 54 (D. Mass. 2010).

As a threshold matter, Relator must show "an actual false claim for payment being made to the Government." <u>Kitsap Physicians Serv.</u>, 314 F.3d at 1002 (citation omitted). Importantly, the FCA "attaches liability, not to the underlying fraudulent activity . . . , but to the 'claim for payment.'" <u>United States v. Rivera</u>, 55 F.3d 703, 709 (1st Cir. 1995).

In his Motion for Summary Judgment, Dr. Khossoussi primarily argues that Relator has failed to provide any evidence of a single claim Dr. Khossoussi submitted, or caused LAMMC to submit, to the government for payment. <u>See</u> Def.'s Mot. for Summ. J. 9:19-12:13, ECF No. 349.

While Relator must present evidence of an actual false claim, she may do so through "sufficiently detailed circumstantial evidence." <u>Kitsap Physicians Serv.</u>, 314 F.3d at 1002.  Relator provides hundreds of pages as exhibits to her Opposition, and while these documents primarily concern the alleged fraudulent scheme to submit false claims and not the false claims themselves, Relator has provided enough circumstantial evidence to raise a genuine issue of material fact as to whether Dr. Khossoussi presented, or caused LAMMC to present, a false claim.  For example, in Mr. Arrigo's Expert Report, he provides a damages figure for the claims submitted related to patients who Triggiani allegedly referred to Dr. Khossoussi.  Arrigo Report 14.  Mr. Arrigo explains in his Report that he matched patient records that indicated Triggiani referred the patient to Dr. Khossoussi with claims submitted to Medicare on behalf of these patients.  <u>Id.</u> at 54-55.

Relator also presents a spreadsheet LAMMC created that identifies patients, the patients' doctor, and the amount of Medicare or Medi-Cal billed.[5]  Decl. of Eric

---

[5] Dr. Khossoussi objects to the spreadsheet based on lack of foundation, hearsay, and relevance.  Def.'s Evid. Objs. 3:19-24. Exhibits offered "in a form not admissible in evidence may be used to *avoid*, but not to *obtain* summary judgment." <u>Quanta Indem. Co. v. Amberwood Dev. Inc.</u>, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014)(citation and quotations omitted); <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 324; <u>Abbott v. Elwood Staffing Servs.</u>, 44 F. Supp. 3d 1125, 1134 (N.D. Ala. 2014)(overruling authentication objection because defendants did not argue documents *could not* be authenticated).  Dr. Khossoussi did not argue that Relator could not authenticate this

Grover in Supp. of Opp'n to Mot. for Summ. J. ("Grover Summ. J. Opp'n Decl."), Ex. 16, ECF No. 400.  The top of the spreadsheet names SGG, Inc.  <u>Id.</u>  Dr. Khossoussi is named throughout the spreadsheet as various patients' doctor, and Medicare was often billed for these patients.  <u>Id.</u>  This spreadsheet in combination with Mr. Arrigo's Report provide enough circumstantial evidence to raise a genuine issue of material fact as to whether Dr. Khossoussi submitted, or caused LAMMC to submit, false claims to the government for payment.

While Relator has presented sufficient evidence to raise a genuine issue of material fact as to whether Dr. Khossoussi submitted, or caused LAMMC to submit, a false claim, she has failed to provide sufficient evidence to raise a genuine issue of material fact as to the knowledge element of her FCA claims related to the alleged kickback scheme.  To establish the requisite knowledge to proceed on her FCA claims, Relator must show that Dr. Khossoussi "(1) ha[d] actual knowledge of the information; (2) act[ed] in deliberate ignorance of the truth or falsity of the information; or (3) act[ed] in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b).

---

spreadsheet at trial.  Further, the spreadsheet is directly relevant to show that claims were submitted to Medicare for services Dr. Khossoussi provided to patients SGG allegedly referred to LAMMC; it does not matter that Dr. Khossoussi has never seen this document before.  Consequently, the Court **OVERRULES** Dr. Khossoussi's objections to the spreadsheet.

With regard to Dr. Khossoussi's knowledge of the alleged kickback scheme, Relator argues that Dr. Khossoussi "worked closely with SGG and Triggiani to receive and admit patients referred by them to LAMMC." Opp'n to Mot. for Summ. J. 18:23-24. Relator further argues that Dr. Khossoussi had weekly meetings and numerous phone calls with SGG and Triggiani for which she presents evidence of SGG's Monthly Consulting Activity Report and Triggiani's cell phone records. Id. at 15:2-13; see Grover Summ. J. Opp'n Decl., Exs. 13, 95.[6] While this evidence shows Dr. Khossoussi communicated with Triggiani and SGG, it does not show that Dr. Khossoussi knew anything about the alleged kickback arrangement between SGG and LAMMC.

Further, Relator points to intake forms containing a circled "T" and noting Dr. Khossoussi as the admitting physician, see Grover Summ. J. Opp'n Decl., Ex. 5, to argue Dr. Khossoussi knowingly admitted and treated patients Triggiani referred. Importantly, "[t]he [Anti-Kickback Statute ("AKS")] does not criminalize referrals for services paid for by Medicare

---

[6] Dr. Khossoussi objects to the SGG Monthly Consulting Activity Report, Grover Summ. J. Opp'n Decl., Ex. 13, on the grounds that it lacks foundation, is hearsay, and is irrelevant because there is no evidence Dr. Khossoussi had any relationship with SGG. Def.'s Evid. Objs. 3:1-6. Again, Relator need not provide her evidence in an admissible form to avoid summary judgment. See Quanta Indem. Co., 2014 WL 1246144, at *2. Further, this evidence is relevant to show the services SGG provided to patients at LAMMC. Accordingly, the Court **OVERRULES** these objections.

or Medicaid—it criminalizes knowing and willful acceptance of remuneration in return for such referrals." <u>Klaczak v. Consol. Med. Transp.</u>, 458 F. Supp. 2d 622, 678 (N.D. Ill. 2006). Therefore, even if Dr. Khossoussi was aware that Triggiani was referring patients to LAMMC, this knowledge only speaks to half of the analysis. Relator must present evidence that Dr. Khossoussi also had knowledge of the kickbacks LAMMC allegedly paid to Triggiani and SGG for the referrals.

Relator has presented no evidence that Dr. Khossoussi had any knowledge that LAMMC was allegedly paying SGG, and therefore Triggiani, kickbacks for patient referrals. In fact, Relator has not even presented evidence showing Dr. Khossoussi had knowledge of any of the terms of the SGG/LAMMC agreement. In his deposition, Dr. Khossoussi testified as follows:

> Q: I'm going to go back to SGG. What was your understanding of what SGG's relationship with LA Metro was?
>
> A: As I mentioned earlier, I just – overall I knew that she had a contract with the administration of LA Metro and it was part of LA Metro giving services in the community.
>
> Q: Did you ever contract for services with SGG between 2004 and 2012?
>
> A: No, never.

Grover Summ. J. Opp'n Decl., Ex. 93 at 107:7-17.

As Dr. Khossoussi's deposition testimony demonstrates, Dr. Khossoussi was never a party to the

SGG/LAMMC agreement or ever involved with the
agreement.  Relator has not provided any testimony or
document showing Dr. Khossoussi's knowledge of the
alleged kickback scheme.  If Dr. Khossoussi was unaware
of the alleged kickback scheme, Relator cannot prove
that Dr. Khossoussi knowingly submitted a claim that
failed to comply with the AKS.  See Klaczak, 458 F.
Supp. 2d at 680 (granting summary judgment on FCA claim
because relator failed to present "a single comment,
email, memo, or other indication [defendants] were
knowing and willful participants in any kickback
scheme").

In a Hail-Mary effort, Relator argues that Dr.
Khossoussi paid kickbacks in exchange for Triggiani's
alleged referrals.  Opp'n to Mot. for Summ. J. 15:14-
25.  Relator relies on a $3,000 check Dr. Khossoussi
paid to SGG on January 18, 2010.  See Grover Summ. J.
Opp'n Decl., Ex. 91.  The word "services" is written in
the "FOR" line of the check.  Id.  In response, Dr.
Khossoussi states in his Declaration that the check was
for assistance SGG provided in moving the contents of
Dr. Khossoussi's office.  Suppl. Decl. of Farhad
Khossoussi, M.D. ("Khossoussi Suppl. Decl.") ¶ 6, ECF
No. 421.  While the Court "may not make credibility
determinations" at the summary judgment stage, Bator v.
Hawai'i, 39 F.3d 1021, 1026 (9th Cir. 1994), Relator
has provided no evidence, only argument, to rebut Dr.
Khossoussi's statement that the check was for moving

expenses.  Thus, when looking at the evidence as a whole, Relator has failed to show a connection between the check and the alleged kickback scheme.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citation omitted)).  Without more than the check and speculation, Relator is unable to prove Dr. Khossoussi's knowledge and participation in the alleged kickback scheme.  <u>See</u> <u>Anderson</u>, 477 U.S. at 249–50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").  Accordingly, Relator has failed to raise a genuine issue of material fact as to whether Dr. Khossoussi paid kickbacks to Triggiani in exchange for patient referrals.

Because Relator is unable to provide evidence showing Dr. Khossoussi had knowledge of the alleged kickback scheme and therefore knowingly presented, or caused LAMMC to present, a false claim, she has failed to raise a genuine issue of material fact as to the second element of her FCA claims premised on the alleged kickback scheme.[7]  Accordingly, the Court **GRANTS**

---

[7] "[T]he prerequisites for liability under both sections, [§ 3729(a)(1)(A) and § 3729(a)(1)(B)], are virtually identical." <u>United States ex rel. Kozak v. Chabad-Lubavitch Inc.</u>, No. 2:10-CV-01056-MCE, 2015 WL 2235389, at *7 (E.D. Cal. May 11, 2015), <u>aff'd sub nom.</u> <u>United States ex rel. Kozak v. Chabad of</u>

Dr. Khossoussi's Motion for Summary Judgment on Counts
I, II, VI, and VII based on the alleged kickback
scheme.

ii. *Triggiani Providing Case Management and*
*Discharge Planning Services*

As with Relator's FCA causes of action based on the
alleged kickback scheme, Relator must prove the same
elements to proceed with her FCA causes of action based
on Triggiani providing case management and discharge
planning services in violation of her Medicare
exclusion. Therefore, Relator must first provide
evidence of an actual false claim Dr. Khossoussi
presented, or caused LAMMC to present, to the
government for reimbursement for case management or
discharge planning services Triggiani provided to Dr.
Khossoussi's patients after her June 19, 2008 exclusion
from Medicare.

Relator has failed to provide evidence of such a
false claim. Again, Relator relies on Mr. Arrigo's
Report to evince the potential damages due to false
claims related to Triggiani's exclusion. In his
Report, Mr. Arrigo states that he was able to match
patient numbers contained in SGG's Case Management and
Discharge Planning Reports with the patient numbers

<hr>

Cal., 697 F. App'x 509 (9th Cir. 2017). Relator was unable to
provide sufficient evidence of Dr. Khossoussi's knowledge of the
alleged kickback scheme, and therefore, she is unable to prove
that Dr. Khossoussi *knowingly* made a false statement material to
a false claim. See 31 U.S.C. § 3729(a)(1)(B).

23

contained in the Medicare claims data Relator's counsel

provided to him. See Arrigo Report 53-54. However,

when discussing the actual charges made to Medicare for

case management and discharge planning, Mr. Arrigo

stated as follows:

> Reimbursable charges for discharge planning and
> case management services, which are present in
> this case, are included in the [Diagnosis-
> related Group] and cannot be "unbundled" for
> purposes of analyzing the amounts reimbursed for
> those services. Even if procedures were
> performed during window of three days prior in a
> facility owned by the hospital, they would be
> included in the billing and DRG and not charged
> separately.

Id. at 32.

In short, case management and discharge planning

services are bundled together with all other inpatient

services and thus do not appear separately on a bill

sent to Medicare for reimbursement. Accordingly,

neither Relator nor Mr. Arrigo can point to a single

claim made to Medicare for case management and

discharge planning services specifically. Without

evidence of a claim for these services, which Relator

alleges Triggiani provided to Dr. Khossoussi's patients

in violation of her Medicare exclusion, Relator cannot

raise a genuine issue of material fact as to her FCA

claims premised on such allegations.

Even if Relator was able to provide evidence that

Dr. Khossoussi presented, or caused LAMMC to present, a

claim for case management or discharge planning

services that *any person* provided his patients, Relator

24

has failed to provide sufficient evidence to show *Triggiani* provided case management or discharge planning services to Dr. Khossoussi's patients. Relator argues that Dr. Khossoussi admitted in his deposition that Triggiani provided case management and discharge planning services for his patients. See Opp'n to Mot. for Summ. J. 17:9-11. However, the deposition testimony Relator cites states just the opposite. When questioned about SGG's participation in discharge planning for his patients, Dr. Khossoussi specifically testified that "SGG was never participating in our discharge planning." Grover Summ. J. Opp'n Decl., Ex. 93 at 134:16-22. Later on in the same deposition, Dr. Khossoussi testified as follows:

> Q: Did SGG ever sit in on your discharge planning meetings?
>
> A: Never.
>
> Q: Did Karen Triggiani ever sit in on your discharge planning for your patients?
>
> A: Never.

Suppl. Decl. of Marc Greenberg in Supp. of Mot. for Summ. J. ("Greenberg Suppl. Decl."), Ex. A at 152:3-8, ECF No. 420-1.

Relator also points to SGG's Monthly Consulting Report, which contains a section noting the patients for whom SGG provided discharge planning. Grover Summ. J. Opp'n Decl., Ex. 13 at 115. However, the patients are simply identified by patient number, and there is no evidence that Dr. Khossoussi treated any of these

patients. _Id._ Further, even if Dr. Khossoussi did treat any of the patients listed in the SGG Monthly Consulting Report, there is no evidence that Triggiani was the one providing the discharge planning services; nowhere in the SGG Monthly Consulting Report does it refer to Triggiani, and Dr. Khossoussi testified that Triggiani did not provide discharge planning services for his patients.

Finally, Relator relies on Triggiani's phone records, which show hundreds of calls made to Dr. Khossoussi following her Medicare exclusion. Grover Summ. J. Opp'n Decl., Ex. 95. However, Relator has no evidence that these telephone calls involved case management or discharge planning for which Dr. Khossoussi billed Medicare. When asked in deposition about the substance of these conversations, Dr. Khossoussi testified as follows:

> Q: And what would be the content of those conversations or meetings?
>
> A: Regarding resources in the community.
>
> Q: So give me an example of a conversation that would, you know, actually be detailing a conversation about resources in the community.
>
> A: For instance, they were telling me that there is such a facility in the community, they need a psychiatrist, "Are you available to provide services to that facility?"

Grover Summ. J. Opp'n Decl., Ex. at 129:23-130:8. Relator has not provided any deposition testimony where Dr. Khossoussi testified that Triggiani provided case

management or discharge planning services for his patients after her Medicare exclusion. Relator is asking the Court to make several unreasonable inferential leaps to find a genuine issue of material fact. Evidence of phone calls is simply not enough to show that Triggiani provided case management or discharge services to Dr. Khossoussi's patients, especially given Dr. Khossoussi's deposition testimony directly contradicting this allegation.[8]

As such, the Court **GRANTS** Dr. Khossoussi's Motion for Summary Judgment on Counts I, II, VI, and VII based on Relator's allegations that Dr. Khossoussi billed for case management and discharge planning services Triggiani provided after her Medicare exclusion.

///

---

[8] Relator also points to several notes to support her allegation that Triggiani provided case management to Dr. Khossoussi's patients. <u>See</u> Opp'n to Mot. for Summ. J. 17:12-18:3 (citing Exs. 29, 52, 59, 60, and 79). However, while some of the documents reference Triggiani and Dr. Khossoussi, they do not evidence Triggiani providing case management or discharge planning services to Dr. Khossoussi's patients. Exhibit 29 is LAMMC's patient "do not admit" list, and the only reference to Triggiani providing services to Dr. Khossoussi's patients is a note that states "patient is a placement issue, check with Karen T. first." Glover Summ. J. Opp'n Decl., Ex. 29. Exhibit 59 is a nurse's notes on a patient, and the only reference to Triggiani is a statement that the nurse "called mp(?) @ 888 510 8800 spoke to Karen who asked CN to call back in 10 mins." <u>Id.</u>, Ex. 59. These references do not identify Triggiani as performing case management services. Nor do these documents in any way suggest Triggiani provided case management and discharge planning services that Dr. Khossoussi billed to Medicare; there is not a single reference to a bill or charge for any service Triggiani provided. Accordingly, these Exhibits do not alter the Court's ruling on Dr. Khossoussi's Motion for Summary Judgment.

### iii.    *Conspiracy*

Relator asserts that Dr. Khossoussi conspired with
LAMMC to admit patients SGG and Triggiani referred
pursuant to the alleged kickback scheme and to use the
services Triggiani provided in violation of her
Medicare exclusion.  Opp'n to Mot. for Summ. J. 7:9-11.
Courts apply general principles of civil conspiracy to
FCA conspiracy claims.  <u>See</u> <u>United States ex rel.</u>
<u>Durcholz v. FKW, Inc.</u>, 189 F.3d 542, 545 n.3 (7th Cir.
1999).  To establish her claim for civil conspiracy
under the FCA, Relator must prove that (1) Dr.
Khossoussi "conspired with one or more persons to get a
false or fraudulent claim allowed or paid by the United
State[s] and (2) that one or more conspirators
performed an act to effect the object of the
conspiracy."  <u>United States v. St. Luke's Subacute</u>
<u>Hosp. & Nursing Ctr., Inc.</u>, No. C 00-1976 MHP, 2004 WL
2905237, at *6 (N.D. Cal. Dec. 16, 2004).

Dr. Khossoussi argues that Relator's conspiracy
causes of action are time-barred because the six-year
statute of limitations begins to run at the
consummation of the conspiracy, and the "last overt
act" doctrine does not apply.  Mot. for Summ. J. 13:19-
25.  Despite this argument, "[t]he Ninth Circuit
determines the accrual of civil conspiracies for
limitations purposes in accordance with the last overt
act doctrine."  <u>Gibson v. United States</u>, 781 F.2d 1334,
1340 (9th Cir. 1986).  The conspiracy "runs separately

from each overt act[,]" and Relator "may recover only for the overt acts . . . that [she] specifically alleged to have occurred within the [] limitations period." Id. (citations omitted). Therefore, the fact that Relator has alleged that the conspiracy began in 2004 does not bar her from bringing her conspiracy causes of action; rather, Relator may prove the underlying conspiracy through overt acts that occurred within the statutory period. See United States ex rel. Fisher v. Network Software Assocs., Inc., 180 F. Supp. 2d 192, 195 (D.D.C. 2002). "[T]he statute of limitations bars recovery for some but not all of the acts committed as a part of the conspiracy."[9] Id.

While the statute of limitations does not bar Relator's conspiracy causes of action, Relator has failed to raise a genuine issue of material fact regarding these causes of action. As explained above, Relator failed to provide sufficient evidence of Dr.

---

[9] The case Dr. Khossoussi cites, Blusal Meats v. United States, 638 F. Supp. 824, 830 (S.D.N.Y. 1986), does not alter this analysis. First, the Blusal Meats court goes against the Ninth Circuit precedent applying the last overt act rule to civil conspiracies. See Gibson, 781 F.2d at 1340; see also Fisher, 180 F. Supp. 2d at 195 (applying the last overt act rule to FCA conspiracies). Second, the Blusal Meats court effectively agreed with the above holdings when it noted that "the occurrence of an act in furtherance of a civil conspiracy within the limitations period does not render every related but otherwise time barred conspiratorial act actionable." 638 F. Supp. at 830. Put succinctly, the conspiracy cause of action can only be based on those overt acts that occurred within the statutory period. Because Relator has alleged overt acts in furtherance of the conspiracy within the statutory period, her conspiracy claims are not time-barred.

29

Khossoussi's knowledge of the alleged kickback scheme. Without knowledge of the alleged kickback scheme, Dr. Khossoussi cannot have conspired to have a false claim submitted for payment pursuant to this scheme.

Additionally, Relator failed to adduce that Triggiani provided case management and discharge planning services to Dr. Khossoussi's patients in violation of her Medicare exclusion. Dr. Khossoussi testified that Triggiani was never involved in discharge planning for his patients, and Relator did not provide any evidence to contradict this testimony. Further, Relator did not provide any evidence of claims showing Dr. Khossoussi or LAMMC billed Medicare for these services Triggiani allegedly provided. Thus, Relator cannot proceed on a conspiracy cause of action based on such allegations.

As a result, the Court **GRANTS** Dr. Khossoussi's Motion for Summary Judgment on Counts III and VIII.

3. <u>Relator's Motion for Partial Summary Judgment</u>

As the Court has granted Dr. Khossoussi's Motion for Summary Judgment in its entirety, Relator's Motion for Partial Summary Judgment as to a number of Dr. Khossoussi's affirmative defenses is **DENIED as MOOT.**

///
///
///

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Dr. Khossoussi's Motion to Exclude [351], **GRANTS** Dr. Khossoussi's Motion for Summary Judgment [349], and **DENIES as MOOT** Relator's Motion for Partial Summary Judgment [348].

**IT IS SO ORDERED.**


DATED: February 20, 2018     s/ RONALD S.W. LEW

                             **HONORABLE RONALD S.W. LEW**
                             Senior U.S. District Judge